The first case we're going to hear is Swatch AG v. Beehive Wholesale, and Mr. Lindenbaum, we'll hear from you first. Good morning, and may it please the Court, my name is Jeffrey Lindenbaum and I represent the appellant, Swatch. Unless the Court has any questions, Swatch plans to rest on its papers with regard to the issues of likelihood of confusion and dilution. And instead, today, I'd like to focus my argument on why the District Court clearly erred when it found that the mark swap was suggestive and not descriptive for Beehive's interchangeable lot components. Essentially, a review of the Patent Office's issuance of a descriptive mark, and it's reviewed de novo. Is that what I understand is the right standard, or you can explain what the standard is? This is a case that originated at the United States Patent Office, it went to the Trademark Trial and Appeal Board, and then was appealed to the District Court, and now this Court reviews the finding. What was the District Court standard? In other words, on the first two issues, the District Court is acting as the originating court, but on this issue, it's reviewing the agency, right? On the issue of descriptiveness, it reviewed the findings of the TTAB under the substantial evidence standard, but for the new evidence that was submitted at the District Court, it reviewed that evidence de novo. Because at the TTAB, there's certain evidence that's submitted during that proceeding, but then at the District Court, if you appeal… Is there any deference on, I mean, the evidence isn't very much, at least the core evidence isn't disputed that much, the how to take the evidence might be, we've always held, for instance, that likelihood of confusion is a factual question that we review for clear error. But in this area, we do have an agency decision, and the question is, does it get any weight in the consideration that the District Court makes, or does the District Court review everything de novo? This Court reviews the District Court. No, no, District Court. The District Court reviews the issue of descriptiveness under the substantial evidence standard, but it does consider the new evidence that's submitted at the District Court that was not before the TTAB de novo. Well, substantial evidence doesn't… Substantial evidence basically says, did the agency have substantial evidence to support its finding? Correct. But the ultimate finding, does it get any deference? I don't believe so. I think if the mark was a registered mark, it's prima facie evidence that it is not descriptive, but in this case, the mark did not mature to registration. It's still an application, so I don't believe so. So the definition of a descriptive mark is well settled. It's not disputed here. A mark is descriptive if it immediately conveys information about one attribute, feature, quality of the goods. There's two important rules that you can follow when you consider whether a mark is descriptive. The first is that you don't start with the mark and then try to guess what the goods are, and second, you don't consider the mark in a vacuum or in the abstract. Rather, you consider the specific features of the party's goods as those features are presented to the consumer in the marketplace, and then armed with that understanding, you consider whether the mark conveys information about that feature. And that's where the district court clearly erred in this case. The district court only considered whether the mark swap was descriptive for the general category of goods found in the application, watch bands and watch faces. It did not consider that the consumer is presented with information that this is an interchangeable watch and then analyze whether, in fact, the mark swap conveys information about that interchangeable feature. And the law in this area is well settled. It begins first with the statute itself, which is 15 U.S.C. Section 1052E1, which says, No mark shall be refused registration unless it consists of a mark which, when used, honoring connection with the goods of the applicant is merely descriptive. And it goes back many years, 1978, the Court of Customs and Patent Appeals in In Re Abcord Development, 588F2D811. And this same standard was repeated in the coach services case that I did not brief in 2012, that whether a mark is descriptive must be considered in, quote, relation to the specific goods for which the registration is sought, the context in which it is used on labels, packaging or advertising material directed to those goods, the possible significance of the term in relation to the goods, and the likely reaction, thereto, of the average purchaser as he encounters the goods in the marketplace. And applying that standard to the facts here, and there was a case from the Federal Circuit last year, 2012, Duopro's Meditech versus Enviro Medical Devices. In that case, there was a registration for the mark snap for medical syringes. And on its face, the word snap does not appear to describe medical syringes. But as in this case, through discovery, it turned out that a key feature of that product was that you snap off the plunger to disable the needle of the syringe. And so the court there found that given that you snap off the plunger, with that information, a consumer would readily understand that, in fact, the word snap conveys information about a feature of that product. And if you apply the same standard here in that context, descriptiveness is obvious because there's no dispute. You know, it's a little more complex than that, I think. We had this case involving AOL where you've got mail and you have mail, with two marks they were claiming. We let them have you've got mail because it described a service and it was sort of linguistically off center. But you have mail, they put up on your computer only when you had mail in the box. And so we found that descriptive of a function and it was basically not descriptive of the service. They didn't have that up there every time. It's only when you had mail in the box, so it was being used linguistically. Here you have a swap watch. So no one would say this, understand, I want to buy a swap. You'd think of some kind of security on the New York Stock Exchange or insurance thing there for a swap. So you're really sort of left with it describing a feature of the watch, which is to be able to swap the dials or to swap components of the watch. But it doesn't quite say that. I mean, they have that little jingle that says swap it, just do it, swap it. And you're suggesting that this cutesy use of swap is so descriptive they can't get any kind of a mark. I mean, basically the consequence of your argument is they don't get a trademark, right? Yes, the consequence of my argument is that they can preclude others from using the word swap for its very meaning, which is right. But it's not really for its very meaning. There is no use, grammatically correct use. Swap suggests that there is some exchangeability of something. Swap it with your friend. You're going steady with a guy or a girl, so we're going to swap our watches or swap the dials or swap the bands. In other words, it's a cutesy use of the English language, and it really doesn't describe a watch, except like a BlackBerry describes a computer. But I think that argument is only true when you consider in the abstract. I think you have to consider it in connection with their advertisement, which says, and this is in the record, it's A469, interchangeable watch bands and faces. They're telling the consumer this is a watch where there's interchangeable watch bands and features. Exactly, but they've given that interchangeability component, which they explained, a trade name, which is not grammatically correct. It doesn't do anything. A swap is an exchange of some kind, I suppose, but it doesn't describe the watch, and it really doesn't describe a feature, except in a very peculiar fashion. I think the danger of saying this is descriptive so that a person, even seeing the features, would understand it as any more than a trademark, a source of this particular watch. It's an aggressive argument, I think. I think that that argument falls into the trap that the district court made, which was to consider, when I see swap, what does it tell me? I don't know what it tells me. It could be this. It could be that. But you have to look at it from a consumer's perspective who has seen the advertisement and have been told this is an interchangeable watch. I'm more puzzled. I mean, it seems to me that consumers aren't going to go through the notion that swap describes a watch, or they may say, oh, it's a cutesy reference to the interchangeability of dials. But you preclude a lot of marks if you're right about this, I think. The question is whether they would understand the word swap to convey information about the feature, and if they understand the feature to be that it's interchangeable and that's the only definition of swap and that you can swap one band for the other, there's no play on words here. It's not like the glass doctor case. It seems to me that you certainly make a plausible argument. My problem is, and it goes back to Judge Niemeyer's first question, isn't this just inherently a question of fact, as is likelihood of confusion? And if so, what did the district court do that was clearly erroneous? The clear error was the misapplication of the standard by not looking first at that the consumer would be armed with the information that this is an interchangeable watch, that that is a feature. And knowing that the word swap only means one thing, that you exchange one thing for another, how could they not know that that's what it meant? There's no play on words here. It's not like the glass doctor case where you have it done. You are reading in, I think, to that case a degree of specificity that it does not require. It appears to me that the district court could interpret our precedent as requiring an assessment of swap as applied to watches generally, not with the level of precision that you are suggesting that search requires. No, I think the Federal Circuit says you have to consider not only the goods in the registration, but the context in which it's used on labels, on packaging, on advertising. That's what we're talking about, the message sent to the actual consumer. What part of speech is this being used as in a descriptive way? That you can swap one band for the other? The word swap, is it a noun, an adverb, adjective? What is it? The same, I think, as snap was. It could be.  Swap can be a verb. But just being a verb doesn't take it out of the context, because we know that from snap, right? That you can snap off the plunger. Well, we're talking about swap. So you're saying that the verb swap is what can't be trademarked as a verb? It conveys information about the feature of the product, and it's the same feature that other companies and competitors use, that the bands can be swapped one for the other. So they label their watch swap. But they're not saying swap it. They do say swap it. That's a jingle, but that's a little bit like Nike's just do it. Well, but that's the actual meaning. That's a real word. There's no play on words here. That is what it means. I see my time is up. You're not until it's read. Yeah, I did want to reserve a few minutes for rebuttal. Okay, fair enough. Thank you. Yep. Mr. Uttermole. May it please the court, William Uttermole on behalf of Beehive Wholesale with me at council table is Megan Carmody. I'd like to first address the point about the standard of review. Both likelihood of confusion and the descriptive suggestive distinction are fact issues. The decision of the TTAB in this case is given substantial evidence deferential review by the district court, and to the extent that there aren't new facts involved would also apply here. To the extent that there were new findings of fact by the district court on an issue, then I think the standard review is clear error. And I think that's important because at least four times before in Pizzeria Uno, the Lone Star case, the U.S. Search case, and the George case that's cited in our brief at page 27, the courts confronted a situation where just the examining, the original trademark examiner had found something to be suggestive as opposed to descriptive, and they said that that decision was deferentially reviewed at this stage, at the appellate stage as well as at the trial stage. Here we have more than that. Our mark was found to be a proper mark by the examining attorney. Then there was evidentiary proceedings brought by Swatch, and the whole TTAB, a panel of three, made that decision. Let me ask you that in this case as just a very particularized application of that. If we look at the agency record and say is there substantial evidence to support the agency's conclusion, we would uphold the conclusion. In this case, the district court did look at additional evidence, but it found that evidence against Swatch in this case, against the challenge, and it doesn't change the agency's substantial evidence. In other words, there's no tension, is there, between the agency record that supported the agency decision and the additional facts added by the district court. I think that's exactly right. The agency made it on a certain set of facts. The judge reviewed that, said there was substantial evidence to support that. He agreed with it. And then he said, and I further agree for these additional reasons. And I think that evidence is fairly telling. There was allusion to it before. Page 47 of the blue brief has the ad, swap interchangeable watch bands and faces. If swap itself was descriptive, there would be no reason for Beehive to add that term interchangeable as part of its ad to help convey to people what kind of product they were selling. And the same thing that the district court relied on, these postcards that were sent to participants in trade shows who were gift shop professionals, as Your Honor said, they have the arrows back and forth and the term swap it. I think one of the mistakes that Swatch makes is in its argument, in its brief, it refers to this as a swappable thing. That's not the analysis. The analysis for descriptive versus suggestive is, does it immediately convey things? Do you immediately understand the product from what has been, from the trademark itself, knowing what the goods are but knowing only the goods in a general sense, versus suggestive, is there some more elaborate process? That's why in the synergistic case, the glass doctor was held suggestive, not descriptive, of glass repair. Coppertone is often given as a good example of a suggestive mark. There, Coppertone, you could say it describes the effect on the skin of using this suntan lotion, but it's always considered to be descriptive because that takes an extra mental step. I think another good example would be the Chevy Volt for a plug-in hybrid car. Volts are what's applied to the car to charge it, and that's an important feature of the car, but it's an extra step in the thought process. And swap is the trademark, not swappable, and as your Honor said, that's a verb. To the extent it has a dictionary definition, it refers to somebody swaps one thing for another thing, like at a swap meet or a barter transaction. It doesn't have the same meaning as interchangeable, which is what Swatch tries to describe it as meaning. That's an extra step. In connection with this product, that's the connotation that you eventually come to, but when they designed this product, it was not something that immediately came to the attention of people. They had to design the display as is addressed. The picture of the display is that joint appendix 143 with watches at the top for the face, bands at the bottom, clearly labeled. And the reason they did that is because otherwise people would not immediately grasp the nature of the product, and the testimony about that is that the joint appendix 179 to 181. So I think the deference is due to Judge O'Grady's decision, and really on this issue, since he didn't disagree with the earlier decision by the TTAB, deference is due to that decision as well. And there really hasn't been any showing under that standard, Swatch having the burden of proof at all the levels here, that there was an error made in that decision. The use of the trademark in this case is as an adjective, right? A swap watch? Well, the trademark is simply swap. So swap as a... It refers to a swap brand watch. Yes. I mean, if you could think of it as applied as an adjective, but the trademark is just the word swap. In the dictionary definition, that's a noun, but it is a verb. Here, if you apply it to watch, then obviously it's an adjective. I mean, you have the old debate going back to Xerox. You start letting it be a verb, use Xerox, a copyright, all of a sudden you end up losing it, and your colleague said that it was being used in this case as a verb. Well, I mean, it's not used as a verb in their advertising. It's swap watch. That's why I say that's an adjective. Right, an adjective. And they include, in some of the advertising, interchangeable. They include other things to help convey the message, but it's an adjective. And now when they use the little jingle, swap it, that's a verb. Yes, but that's not the swap it is not the trademark issue. I understand. It's trying to convey an extra thing, so you can't rely directly on that. So I think with respect to the descriptiveness issue, if that's all we're arguing, the only other thing I'd point out is in the Sarah Lee case, counsel for swatch makes the point that you're supposed to go all the way down the road until you understand everything about the product and then determine whether it's directly descriptive or suggestive. That's not the test. And this court said in Sarah Lee that the test is whether a person without actual knowledge would have difficulty ascertaining the nature of the product that the marks represent. And here the registration is simply for watch bases and bands, watch faces and bands. It's not for a interchangeable watch. So I don't believe that is the test that's applied. So unless the court has other questions on that. Thank you, Mr. Ramone. Thank you. Mr. Lindenbaum. So the point that I was making earlier I think was just explained by counsel in that at first the consumer didn't understand that the product may be interchangeable. So Beehive conveyed that message to the consumer. So now we have a consumer who understands that a feature of this product. Why did they use the word interchangeable? Why did they, as a way to explain a feature of the product, that this is these bands and watches are interchangeable. If it was self-evident, they wouldn't have to add that. Well, I don't know their reason for doing so, but what's worth. I do, because you couldn't readily understand it. But under the proper test, what's relevant is that we now have a consumer who understands a significant feature of this product. So the only question we have to ask is would that consumer, seeing the word swap, knowing that this is interchangeable, knowing that the two mean exactly the same thing, would they understand that the word swap describes a feature of the product? Of course they would, because that's exactly how it's being used. That's why they chose the mark, for no other reason, because it conveys that you can swap one band for the other. That's exactly the point, and that's the point that the district court met. You don't go back now to does swap tell you that they're interchangeable. You start from the perspective of the consumer who's been told, this is the feature of our product, it's interchangeable, knowing that. So if I'm told that you put on this lotion in the sun, it'll give you copper-toned skin. I explained that. Does that mean they lose copper tone? I think it's a difficult analogy, because copper tone isn't a word that exists. I think you have to, I think maybe the glass doctor example from this court is a better example. Well, they put the two together, but it's still, there's still copper and tone are well-understood words. But you don't... Copper had that little lingo, like the interchangeability. I said this gives you a copper-toned skin when in the sun for 2.5 hours. But you don't copper tone your skin. It's not explaining to you a feature of the product. You don't swap the watch either. You swap the bands. That's exactly what you do. No, you swap components. You swap components. You may swap interchangeable components, but it's not clear because they use the swap with the watch too. Right, you swap the different components of the watch. I'm not sure I understand that distinction. But I think what is also missing here is this idea that this is a suggestive mark. It only conveys an idea. And it's left to the consumer to figure out what that message is. And I think the glass doctor case highlights that point. In that case, you have doctor doesn't repair, a doctor heals. So you had to translate what is healed, translate into this context. Here, swap only means one thing. There's no pause or thought that has to be given. Swap means to interchange one thing for another. And that's exactly how it's being used in this context. Not only was there a clear legal error here, but I think for practical reasons as well, policy reasons, the mark swap should not be granted. Let me ask you about the standard review again. And I'll ask the same question I asked your colleague. If we were to agree with the district court that there was substantial evidence to support the agency's conclusion, does that end the case? Because the district court's fact-finding didn't go your way. It went in support of the agency. So we wouldn't even have to consider the district court. Sorry, if the district court... had substantial evidence to support its conclusion. Well, no, because the agency, of course, didn't have the full record. The agency only had a limited record. I understand. Isn't that the standard review of the agency? You look at the record before the agency and determine whether they had substantial evidence to reach their conclusion. That's what the district court looked at for the agency's conclusions. This court looks at whether the district court committed a clear error. I understand, but if we agree with the district court that the substantial evidence supported the agency, do we review anything else? I think you still have to answer the question whether there was clear error in the analysis of the descriptiveness of the mark. I think you still have to. If you find that the district court misapplied the standard... You're confusing me because you're not following the standard you announced. I thought we give deference to the agency if the agency had substantial evidence to support its conclusion. Maybe I misunderstood. Is that what substantial evidence means, standard? That is what it means, but that's what the district court applies with respect to the agency's findings. I understand, and if we agree that the district court's analysis on that was correct, and the only way we can determine that is to look at the agency record and see if the agency had substantial evidence. We do this all the time. Right, but this court still has to. I'm out of time, but if I may finish and answer your question. I think this court still has to consider separately whether, because there was new evidence introduced at the district court, whether there was an error made. That's my question. If the district court did consider new evidence, which it did, and found that evidence against you, we don't have to look at that evidence, do we? Yes, you have to decide whether the district court made a clear error in its consideration of that evidence. Well, that is interesting because I thought you first told us that with respect to the additional evidence, de novo on the evidence before the district court in the first instance. The district court does a de novo review of the evidence before it in the first instance, yes. No, our review. Your review is not de novo. No, no, I'm sorry if I made that mistake. No, you do not conduct a de novo review of the evidence. I don't quite understand. We review it for clear error? Yes. We review the new evidence, the findings that are made on the new evidence for clear error? I believe so. So we give deference to the district court on that point? Yes, and if you find a clear error was committed, then you need to reverse. Yes, that's my understanding. I'm sorry. No, that's just not a clear standard. We have this combination of standards. And I'm suggesting if we agree that the agency decision was correct under the standard that we review agency decisions or the district court reviews agency decisions and that the district court did not err in concluding that the agency had substantial evidence. It seems to me that would end the case because there was no additional evidence in your favor, found in your favor. It all went the other way. Now, you say it's clear error that it went the other way. So you're saying, but then what evidence do we have to support you? You review that evidence and you determine if a clear error was made. And that, in turn, reverses the agency? That, in turn, reverses the district court, and the application is returned back to the trademark office. I don't follow. I don't follow how a finding of clear error on the district court's facts helps you in connection with the district court's review of the agency. My answer is that if there's a clear error that was committed in determination as to whether the mark was descriptive, considering the evidence that was before the district court. So we find it's clear error, but then you still have the courts finding that my facts don't make any difference because I found that the agency had sufficient facts to reach its conclusion. But if you find error in all of that, you still reverse. Well, I find error in that, but I'm hypothesizing that we might agree that the district court review of the agency was correct. Right. My argument today is that it was not. Okay. We'll try to sort that out. Thank you very much. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan